IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

KURT TAYLOR, #216 804                    *

     Plaintiff,                          *

        v.                              *      2:03-CV-1016-WHA
                                                      (WO)
NAPHCARE, INC., *et al.*,                 *

     Defendants.              *

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

Plaintiff, Kurt Taylor, a state inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action on October 8, 2003.  He complains of various violations of his constitutional rights following his arrival at the Bullock Correctional Facility ("Bullock") on or about June 1, 2001.  Specifically, Taylor's complaint asserts challenges to (1) the living conditions to which he was subjected at Bullock including the presence of vermin and insects in the institution and occasionally in the food, undercooked food, a lack of hot water for one week, and unclean shower areas ; (2) the provision of inadequate medical care; (3) the denial of due process during disciplinary proceedings; (4) the presence of female guards; (5) his placement in "detention segregation"; (6) the loss of personal property; and (7) cruel and abusive

treatment as a result of being dragged across the floor by correctional officers.[1]

Named as defendants to the instant cause of action are NaphCare Medical Services, Inc., Dr. Tahir Siddiq, Deputy Commissioner Terrance Jones, Commissioner Donal Campbell, Warden Arnold Holt, Assistant Warden Louis Boyd, Captain Nettles, Sergeant Jackson, Sergeant Speck, Correctional Officers Floyd, Bowen, James, Perkins, Stephens, Cunningham, Turner, McCall, Washington, Rudolph, Franklin, and Smith, Warden Sandra Giles, Canteen Manager Pat Jackson, Sergeant Rose, Sergeant Janet Hicks, Nurses Brown, Rogers, Lake, Jackson, Slater, and Pippins, Dr. Sanders, Canteen Clerk Scheryl Watson, Classification Specialist Sherry Seals, Account Clerk Patsy Faulkner, Mental Health Social Worker Mr. Anthony, and the Alabama Department of Corrections.[2]

In response to the orders of the court, Defendants filed special reports, a supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Taylor that Defendants' special reports, as supplemented, may, at any time, be treated as motions for summary judgment, and the court explained to Taylor the proper manner in which to respond to a motion for summary judgment. Taylor filed a response to the special report filed by Defendants. This case is now

---

[1]The instant action is presented in a narrative, rambling, and stream-of-consciousness style. Such style does not lend itself to the requirements of Rule 8(a) and (e)(1) , *Federal Rules of Civil Procedure*, which requires, in part, that "[a] pleading which sets forth a claim for relief, . . ., shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief, . . ." and that "[e]ach averment of a pleading shall be simple, concise, and direct." Nevertheless, after careful review of the complaint, the court finds that the allegations Taylor has presented for review are those outline above. *See generally Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) (*en banc*) (citation omitted) ("Pleadings must be something more than an ingenious academic exercise in the conceivable.").

[2]The job descriptions for the defendants were accurate at the time the instant cause of action was filed.

pending on Defendants' motions for summary judgment.  Upon consideration of such motions, the evidentiary materials filed in support thereof, and Taylor's opposition to these motions, the court concludes that Defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

In order to survive Defendants' properly supported motions for summary judgment, Taylor is required to produce some evidence supporting his constitutional claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324.  A plaintiff's conclusory, unsupported and self-serving allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*,65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the adverse parties upon their properly supported motion.  *Celotex Corp.*, 477 U.S. at 322; *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where the evidentiary materials before the court indicate that there is no genuine issue of material fact and that a party moving for summary judgment is entitled to such judgment as a matter of law, the entry of summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510

(11th Cir. 1987).

The law is well settled that a *pro se* plaintiff should not be held "to strict accountability of compliance with the rules of procedure" and such a plaintiff's complaint should be construed more leniently than formal pleadings drafted by attorneys. *Holifield v. Reno,* 115 F.3d 1555, 1561 (11th Cir. 1997) (*citing Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under the summary judgment standard of establishing the existence of a genuine issue of material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, a plaintiff's *pro se* status does not mandate the court's disregard of elementary principles of production and proof in a civil case.

### III.  THE STATUTE OF LIMITATIONS

Taylor filed this complaint on October 8, 2003.  Thus, claims concerning the conduct Taylor complains about which occurred prior to October 8, 2001 are barred by the statute of limitations.

While there is no express period of limitations in the Civil Rights Act, federal courts generally apply the most appropriate state statute of limitations to a claim filed under 42 U.S.C. § 1983.  *See Wilson v. Garcia*, 471 U.S. 261 (1985); *Burnett v. Grattan*, 468 U.S. 42 (1984).

Federal courts must look to state law to determine, first, what

4

> statute of limitations is applicable, and second, whether that
> limitations period is tolled. *Whitson v. Baker*, 755 F.2d 1406.
> 1409 (11th Cir. 1985). . . .   Alabama law [ ] provides that the
> applicable limitations period is the one in effect when the claim
> is filed, not when the cause of action arose. *Tyson v . Johns
> Manville Sales Corp.*, 399 So.2d 263, 269-70 (Ala.1981).

*Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994).   Alabama's general two year statute

of limitations for personal injury actions is the most applicable to the case at bar. *Ala. Code*

§ 6-2-38(l). *See Owens v. Okure*, 488 U.S. 235, 249-250 (1989) (the proper statute of

limitations for § 1983 actions is the forum state's general or residual statute of limitations for

personal injury actions); *see also Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992).

Some of the  actions about which Taylor complains in this action occurred after he

entered Bullock in June 2001. That portion of the tolling provision which previously applied

to convicted prisoners was rescinded by the Alabama legislature on May 17, 1996. *See Ala.

Code* § 6-2-8(a) (1975, as amended).[3]   Under the facts of this case, the tolling provision of

*Ala. Code* § 6-2-8(a) is, therefore, unavailing.   Consequently, the applicable statute of

limitations expired on Taylor's claims which occurred prior to October 8, 2001.  Taylor filed

the instant complaint on October 8, 2003.  This filing, with respect to those claims arising

on or before October 8, 2001, is after the applicable limitations period lapsed.

Unquestionably, the statute of limitations is usually a matter which may be raised as

---

[3]The 1996 amendment, effective May 17, 1996, removed imprisonment as a disability entitled to
protection under the tolling provision.  In its pre-amendment form, the statute provided that "[i]f anyone
entitled to commence any of the actions enumerated in this chapter . . . is . . . imprisoned on a criminal charge
for any term less than life, he shall have three years, or the period allowed by law for the commencement of
such action if it be less than three years, after the termination of such disability to commence an action . . ."
*Ala. Code* § 6-2-8(a)(1975).

an affirmative defense.  The court notes, however, that in an action proceeding under § 1983, it may consider, *sua sponte*, affirmative  defenses that are apparent from the face of the complaint.  *Clark v. Georgia Pardons and Parole Board*, 915 F.2d 636, 640 n.2 (11th Cir. 1990); *see also Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990).  "[I]f the district court sees that an affirmative defense would defeat the action, a section 1915[(e)(2)(B)(I)] dismissal is allowed."  *Clark*, 915 F.2d at 640.  "The expiration of the statute of limitations is an affirmative defense the existence of which warrants dismissal as frivolous.  *See Franklin* [*v. State of Oregon*], 563 F. Supp. [1310] at 1330, 1332 [D.C. Or. 1983]."  *Id*. at n.2.  In analyzing § 1983 cases, "the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of the answer."  *Ali*, 892 F.2d at 440.  "It necessarily follows that in the absence of . . . defendants the . . . court must evaluate the merit of the claim *sua sponte*."  *Id*.

> An early determination of the merits of an IFP proceeding provides a significant benefit to courts (because it will allow them to use their scarce resources effectively and efficiently), to state officials (because it will free them from the burdens of frivolous and harassing litigation), and to prisoners (because courts will have the time, energy and inclination to give meritorious claims the attention they need and deserve).  'We must take advantage of every tool in our judicial workshop.'  *Spears* [*v. McCotter*], 766 F.2d [179, 182 (5th Cir. 1985)].

*Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

Based on the facts apparent from the face of the present complaint, Taylor has no legal basis on which to proceed as this action, with respect to those claims which occurred prior to October 8, 2001, is brought more than two years after the violations about which he

complains accrued.  The statutory tolling provision is unavailing. In light of the foregoing, the court concludes that Taylor's challenges to the conduct and/or actions of Defendants which occurred prior to October 8, 2001 are barred by the applicable statute of limitations and these claims are, therefore, due to be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(i); *Clark*, 915 F.2d 636; *see also Neitzke v. Williams*, 490 U.S. 319 (1989).

### IV.  LACK OF SERVICE ON EDDIE TURNER and  DR. SANDERS

In his complaint, Taylor names Officer Eddie Turner and Dr. Sanders as defendants. Although the court attempted service on these individuals, service was not perfected on them. The court entered an order informing Taylor of the failure to perfect service on Officer Turner and Dr. Sanders,  advising him of his responsibility to provide the court with a correct address for service, and cautioning him that the failure to perfect service would result in the dismissal of his claims against any defendant on whom service was not perfected.  (Doc. Nos. 4, 10,  99.)

Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice....  [I]f the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."  When a plaintiff fails to perfect service of process within the 120-day period, dismissal is mandatory unless the plaintiff can show good cause or establish sufficient grounds for an extension of this time period. *Schnabel v. Wells,* 922 F.2d 726, 728 (11th Cir.1991) (interpreting the 120-day period as it

appeared in Rule 4(j), *Federal Rules of Civil Procedure*, the predecessor to Rule 4(m), *Federal Rules of Civil Procedure*); *In re Cooper,* 971 F.2d 640, 641 (11th Cir.1992) (Absent a showing of good cause, a district court has no discretion to salvage an action in the event of a violation of Rule 4(m)); *Horenkamp v. Van Winkle & Co.,* 402 F.3d 1129, 1132 (11th Cir.2005) (A court may grant an extension to serve process for either "good cause" or another sufficient ground). "[C]ourts have found 'good cause' under Rule 4[m] only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Prisco v. Frank,* 929 F.2d 603, 604 (11th Cir.1991).

The time allowed for perfecting service of process on Officer Turner and Dr. Sanders has now expired and Taylor has not demonstrated the existence of good cause warranting an extension of the time for service. Consequently, Taylor's claims against Officer Turner and Dr. Sanders are subject to dismissal without prejudice as service has not been perfected on these individuals within the 120-day period required by Rule 4(m), F.R.Civ.P.

## V.   CLAIMS FOR RELIEF

*A.  The Request for Injunctive Relief*

During the pendency of this action, Taylor was transferred from Bullock to the Holman Correctional Facility.   The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of

repeated injury).  As it is clear from the pleadings and records before the court that Taylor is no longer housed at Bullock, his request for injunctive relief is moot.

*B.  The Conditions Claim*

The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337 (1981).  Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations.  *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  The Constitution "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349). Thus, it is well-settled that the treatment a prisoner receives and the conditions under which he is confined are subject to constitutional scrutiny.  *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at 832  (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)); *Helling,* 509 U.S. at 33.   In order to demonstrate an Eighth Amendment violation with respect to conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry.  *Farmer*, 511 U.S. at 834.  The objective component requires an inmate to prove the he was denied the "minimal civilized measure of life's necessities." *Id*. The challenged prison condition must be "extreme" and must pose "an unreasonable risk of

9

serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citations omitted).   The subjective component requires a prisoner to prove that the prison official acted with "deliberate indifference" in disregarding that risk by showing that an official knew the inmate faced a "substantial risk of serious harm" and with such knowledge, disregarded that risk by failing to take reasonable measures to abate it.   *Farmer*, 511 U.S. at 837.   "[D]eliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."   *Id.* at 835.   Thus, in order to survive summary judgment on his claims challenging the conditions of confinement, Taylor is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation."   *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The living conditions within in a prison will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347.   "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities.   Such conditions could be cruel and unusual under the contemporary standard of decency . . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional."   *Id.*   To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate.   *See Id.*   at 366.   In a case

involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Taylor complains that while incarcerated at Bullock he was subjected to inhumane living conditions.  He claims that black mold, vermin, and mice were present in the dining hall, dishroom, and dormitories, that the mental health dorm was overcrowded, that mattresses and pillows were worn-out and seldom washed, that insect and vermin waste were found in the food, that inadequate food preparation caused an epidemic of "riasons," that, in general, the provision of medical care was inadequate, and that the shower facilities were not clean.   Defendants filed evidentiary materials responding to Taylor's claims of unconstitutional conditions.

Taylor has failed to establish that the conditions of his confinement denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain.  *Wilson*, 501 U.S. 294; *Rhodes*, 452 U.S. at 347. Further, even viewing the facts in the light most favorable to Taylor and assuming, *arguendo*, that he was able to satisfy the objective component of an Eighth Amendment violation, the undersigned finds that he cannot succeed on the subjective component as he has failed to offer evidence sufficient to show that Defendants acted with the requisite culpability.   *Farmer*, 511 U.S. at 837. Consequently, Defendants' motion for summary judgment on Plaintiff's Eighth Amendment conditions claim is due to be granted.

11

*C. Disciplinary Proceedings*

Taylor complains that he received a false disciplinary for failing to obey a direct order. He further alleges that disciplinary hearings "are a joke" because they are neither fair nor impartial.

Defendants maintain that Taylor is prohibited from earning good time credits due to his conviction for first degree robbery, a Class A felony, which, under Ala. Code § 41-9-41(e) (1975), is a bar to receiving good time credits. As a result, sanctions imposed against Taylor as a result of disciplinary infractions involve loss of privileges and confinement on disciplinary segregation.[4]

*i.  The Fabricated Charges Claim*

Taylor asserts that disciplinary proceedings held August 13, 2003 resulted from false accusations and fabrications by Defendants.  Defendants maintain that Taylor received a disciplinary notice on August 5, 2003 for failing to obey a direct order when, after refusing to cooperate with medical personnel, he then refused Officer Anthony Jackson's orders that he leave the infirmary.  Following the August 13, 2003 disciplinary hearing on this rule violation, the disciplinary hearing officer ["DHO"] found Taylor guilty as charged.  The DHO based his decision on the testimony of the arresting officer, Taylor, and several witnesses. Sanctions against Taylor included 20 days loss of store, visiting, and phone

---

[4]Taylor is on the mental health case load.  As a result, when disciplinary action was instituted against him at Bullock a *Mental Health Consultation to Disciplinary Process* form was completed to determine if he was competent to participate in the hearing and whether any mental health issues needed to be considered regarding disposition if he were found guilty.  Mental health staff were also given the opportunity to be present at the hearing.  (Doc. No. 29, Plaintiff's Medical Records.)

privileges, and confinement to segregation for 21 days.   It is clear that Defendants do not admit that the information contained in the disciplinary report is either fabricated or false. (*See* Doc. No. 36, Exh. 1, Exh. 2, Disc. - Attachments.)

While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982).   In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files.   Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim."   *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001).   Taylor merely asserts that Defendants based the August 5, 2003 disciplinary infraction for failing to obey a direct order on false information.   This does not state a claim for relief, and Defendants are, therefore, entitled to summary judgment.[5]

 *ii. The Bias/Impartiality Claim*

---

[5]To the extent Taylor  maintains that he was denied due process in connection with the August 13, 2003 disciplinary hearing, this claim entitles him  to no  relief.  *See Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Court  specifically rejected the contention that any action taken by correctional officials as a punitive measure encroaches upon a liberty interest protected under the Due Process Clause.  *Id.* at 484. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," and a prisoner's loss of privileges and assignment to segregation for a short period of time, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the inmate nor do[] [they] "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 485.  Because the allegations about which Taylor complains with regard to the disciplinary proceeding arising from the August 5, 2003 incident and the sanctions imposed as a result thereof were "within the range of confinement to be normally expected" by prison inmates "in relation to the ordinary incidents of prison life," he fails to assert a deprivation of any constitutionally protected liberty interest as he has no entitlement to due process in connection therewith.  *Id.* at 484.

Taylor alleges that disciplinary hearings at Bullock "are a joke" because they are neither fair nor impartial.  Although Taylor's claim of bias is not very specific, he appears to complain that because all the correctional officials involved with a disciplinary proceeding work on the same shift, they cannot be impartial or fair.

Mere familiarity with facts which have been gained in the performance of assigned duties or responsibilities does not disqualify an individual from serving as a hearing or reviewing officer.  *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482 (1976).  An administrative hearing or reviewing officer is presumed to be unbiased.  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Any alleged bias must be evident from the record and cannot be based on speculation or inference.  *See Nash v. Auburn University*, 812 F.2d 655, 665 (11th Cir. 1987).  For improper bias of a hearing or reviewing officer to be shown, the conduct of such officer must be so extreme that it deprived the hearing or appeal of the fairness and impartiality necessary to the fundamental fairness required by due process.  *N.L.R.B. v. Webb Ford, Inc.*, 689 F.2d 733 (7th Cir. 1982).

Here, Taylor has not come forward with any evidence which establishes bias on the part of those defendants involved with his August 13, 2003 disciplinary hearing.  The record of the disciplinary proceedings does not disclose extreme conduct which deprived the disciplinary proceedings of fundamental fairness; rather, these records establish that the hearing officer, Defendant Washington, afforded Taylor the requisite due process and based his findings solely on the evidence presented at the hearing.  Taylor is, therefore, entitled to no relief on his bias claim.

*D. The Harassment/Privacy Claim*

Taylor alleges that on August 12, 2003 Officer Mary Bowen[6] harassed him by banging on a window next to the urinals, threatened to kill him, and stood beside him as he urinated. He complains that Defendant Bowen's conduct violated his right to privacy.

In response to these claims, Defendant Bowen denies harassing or threatening to kill Taylor. She further asserts that as a correctional officer with the Alabama Department of Corrections her duties include routine monitoring and security checks of the dormitories to which she is assigned. During her tours of duty she observes many inmates using the urinals. (Doc. No. 36, Exh. 9.)

*i. The Verbal Abuse/Harassment Claim*

The law is settled that verbal harassment and abuse and mere threatening language and gestures of a custodial officer do not amount to a constitutional violation. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.3d 143, 146 (5th Cir. 1983); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973). Consequently, Taylor's complaints of verbal abuse and harassment do not support a claim of constitutional magnitude.

*ii. The Right to Privacy Claim*

With regard to Taylor's claim regarding Officer Bowen observing him while he used the urinal, the court understands him to allege that his constitutional right to bodily privacy

---

[6]Taylor originally identified Officer Bowen as "Mary Barnes."

was violated because female correctional officers are assigned to jobs in areas of Bullock

where they had occasion to view him without clothing.  Taylor is entitled to no relief on his

privacy claim as this court has previously decided this issue adversely to his present position.

Specifically, the court determined that the State's policy of allowing female correctional

officers unrestricted access to areas of prisons where they may, on occasion, view male

inmates in various stages of undress is reasonably related to valid penological goals.  In

making this determination, the court reasoned as follows:

> Prisoners retain a constitutional right of bodily privacy subject to limitations
> reasonably related to legitimate penological interests.  *See Fortner v. Thomas*,
> 983 F.2d 64 (1987); *see also Turner v. Safley*, 482 U.S. 78 (1987).  A prison
> regulation which impinges on prisoners' constitutional rights is valid if
> reasonably related to legitimate penological interests.  *Turner v. Safley, supra*.
> In determining reasonableness, relevant factors include (1) whether there is a
> valid, rational connection between the regulation and a legitimate and neutral
> governmental interest put forward to justify it, which connection cannot be so
> remote as to render the regulation arbitrary or irrational; (2) whether there are
> alternative means of exercising the asserted constitutional right that remain
> open to inmates, which alternatives, if they exist, will require a measure of
> judicial deference to the corrections officials' expertise; (3) whether and the
> extent to which accommodation of the asserted right will have an impact on
> prison staff, on inmates' liberty, and on the allocation of limited prison
> resources, which impact, if substantial, will require particular deference to
> corrections officials; and (4) whether the regulation represents an exaggerated
> response to prison concerns, the existence of a ready alternative that fully
> accommodates the prisoner's rights at de minimis costs to valid penological
> interests being evidence of unreasonableness.  *Id*. at 2259-62.
>
> The paramount penological goal is maintaining security of the institution, for
> the safety of the inmates, the staff and society.  *See Whitley v. Albers,* 475 U.S.
> 312, 320 (1979).  Because prisons contain an "ever present potential for
> violent confrontation and conflagration," [*Jones v. North Carolina Prisoners
> Labor Union, Inc.,* 433 U.S. 119, 132 (1977),] those who run prisons should
> be accorded wide ranging deference in the choice and execution of policies
> necessary to maintain order and discipline. *See Whitley v. Albers,* at 320; *Bell*

*v. Wolfish,* 441 U.S. 520 (1979). The defendants assert that "if female correctional staff members were not allowed to work in the dormitory areas, it would cause logistical and security problems." *Affidavit of Defendant Mosley* at 1. [It is well settled] that violent incidents in the shower and bathroom areas occur often in male facilities and rarely at the Julia Tutwiler Prison for Women. . . .  The assignment of female officers to all areas of the [correctional facilities in which male inmates are housed] is a reasonable attempt to promote the legitimate penological objective of prison security.  *See Robinson v. Boulier*, 121 F.3d 713, 1997 WL 546036 (8th Cir. 1997) (table, No. 94-2593) ("[I]nstitutional concerns for security and equal employment opportunities outweighs whatever minimal intrusion on Robinson's privacy that might result from surveillance by female officers.")*; Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (endorsing the holding in an unpublished opinion, *Barnett v. Collins*, 940 F.2d 1530 (5th Cir. 1991) (table, No. 91-1038), wherein the Court held that no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of female guards is necessary to maintain security at a correctional facility); *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) (holding that "whatever minimal intrusions on an inmate's privacy [that] may result from such surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities."); *Sypchala v. Rushen*, 877 F.2d 64, 1989 WL 67110 (9th Cir. 1989) (table, No. 87-2968) (holding that the presence of female guards while male prisoners are naked is incidental to the legitimate interest of maintaining prison security); *Grummet v. Rushen*, 779 F.2d 491, 496 (9th Cir. 1988) ("[t]o restrict ... female guards from ... occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities.").  Thus, the use of female prison guards is reasonably related to a legitimate penological objective, and therefore, prisoners limited rights of bodily privacy must yield to that policy.

The policy of allowing female guards unrestricted access to inmates' living areas also serves other important interests.  States have a compelling interest in eliminating discrimination against women.  *Board of Directors of Rotary International v. Rotary Club of Duarte,* 481 U.S. 537, 549 (1987).  The prohibition of discrimination in employment applies fully to women guards and to the extent that it is an operational or administrative necessity, nondiscrimination is also by definition a legitimate penological objective. *Kent v. Johnson,* 821 F.2d 1220 (6th Cir. 1987).  To deny females the right to be assigned to all areas of an institution would deny those employees equal

employment opportunities.  Further, to restrict the female prison guards [employed at male prisons] from positions which involve occasional viewing of [nude] inmates would necessitate substantial rearrangement of work schedules and, as noted, could compromise both internal security needs and equal employment opportunities for the female guards. *Gurmmett v. Rushen*, 79 F.2d at 496.

Thus, under the *Turner* analysis, the prison's  policy of placing female guards in all areas of prisons, while it may impinge on prisoners' right to privacy, nevertheless clearly meets the reasonableness standard as it has been shown to be related to the legitimate penological interests of security and nondiscrimination. Therefore, this policy is constitutionally valid.

*Pierce v. Mosley, et al.*, Civil Action No. 98-A-884-N (M.D. Ala. 2001) (Doc. No. 34 at pgs. 5-9.) (footnote omitted), adopted as opinion of the court by Order of July 25, 2001 (Doc. No. 35); *see also Miller v. Johnson, et al.,* Civil Action No. 99-A-1426-N (M.D. Ala. 2000) (Doc. No. 8 at pgs. 5-7), adopted as opinion of the court by Order of March 24, 2000 ( Doc. No. 9) ("A prisoner's right to bodily privacy is subject to limitations reasonably related to legitimate penological interests.  Assignment of female officers to all areas of an institution is a reasonable attempt to promote the legitimate penological objective of prison security.  Moreover, such assignment also provides female guards employment opportunities equal to those of their male counterparts.  The use of female prison guards is therefore reasonably related to a legitimate penological objective and other important State interests.  An inmate's limited rights of bodily privacy must therefore yield to such policy.").   In light of the foregoing, the court concludes that Defendants' motion for summary judgment is due to be granted on Taylor's privacy claim.

*E.  The Segregation Claim*

Taylor alleges that Defendants Bowen and Stephens conspired to put him in "detention segregation" "just because they could."  He also contends that this conduct denied him due process.

### i.  The Conspiracy Claim

Vague and conclusory allegations of conspiracy will not support a § 1983 claim. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Other than his self serving allegation, Taylor presents nothing to this court which indicates that Defendants Bowen and Stephens entered into a conspiracy to arrange his placement on "detention segregation." Taylor's bare allegations of a conspiracy, therefore, are insufficient to support a claim for relief under 42 U.S.C. § 1983.  *Id*.

### ii.  The Due Process Claim

Taylor maintains that Defendant Bowen and Stephens placed him on "detention segregation" for no reason, thereby violating his right to due process.  This claim entitles Taylor to no relief.

In order to state a claim for denial of due process under the Fourteenth Amendment, Taylor must allege that a constitutionally protected life, liberty, or property interest was at stake.  The Constitution itself does not give prisoners an interest in being classified to a particular area within a penal facility.  *Cf.  Meachum v. Fano*, 427 U. S. 215, 224 (1976) ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution.").  While a state

can create a constitutionally protected liberty interest, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Taylor's placement on segregation, without more, "does not represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Sandin*, 515 U.S. at 485. Because this allegation fails to assert a deprivation of any constitutionally protected liberty interest, Taylor has no entitlement to due process in connection therewith.

## F.  Loss of Personal Property

On September 24, 2003, Correctional Officer Ruffin discovered an envelope containing a letter and aspirin in Taylor's cell. Officer Ruffin confiscated the envelope and advised Taylor he would have to show it to Officer Janet Hicks. Taylor complains that Defendants threw away the envelope and its contents.

According to Defendants, Taylor's cell was checked for unauthorized items on September 23, 2003. A search of his cell uncovered an envelope containing 50 pills. The pills were taken to the infirmary for identification. Once identified, medical staff disposed of the pills and envelope. Taylor received a disciplinary for possession of contraband. (Doc. No. 36, Exh. 17 and Attachment.)

The court understands Taylor to complain that Defendants denied him due process by improperly confiscating his personal property consisting of the letter and envelope because

such was not contraband. The court, however, concludes that under no set of facts is Taylor

entitled to relief.

> "If the [items taken from the plaintiff were] not returned because
> of [Officers Ruffin and/or Hick's] negligence, there has been no
> unconstitutional deprivation of property.  *See Daniels v.*
> *Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662
> (negligent loss of property does not rise to the level of a
> constitutional violation.)   If [Offices Ruffin and/or Hicks]
> intentionally refused to return the [items Taylor claims he was
> authorized to possess and the confiscation was therefore
> unauthorized], plaintiff has not alleged a constitutional violation.
> In *Hudson v. Palmer* the Court ruled that an 'unauthorized
> intentional deprivation of property by a state employee does not
> constitute a violation of the Due Process Clause . . . if a
> meaningful postdeprivation remedy for the loss is available.'
> 104 S.Ct. at 3202, 82 L.Ed.2d at 407.  It is essential to [the
> instant] complaint that it allege that [Officers Ruffin and/or
> Hicks] acted without authorization. If [Officers Ruffin and/or
> Hicks] w[ere] acting pursuant to authorization, [their] actions
> would be within the outer perimeter of [their] duties and would
> not have violated any clearly established constitutional right and
> therefore [they] would be immune from suit.  *See Scheuer v.*
> *Rhodes,* 416 U.S. 232, 247-48, 94 S.Ct. 1683, 1691-92, 40
> L.Ed.2d 90 (1974); *Flinn v. Gordon,* 775 F.2d 1551, 1553 (11th
> Cir.1985).  Only if the complaint is construed as alleging that
> [Ruffin and/or Hicks] w[ere] acting in bad faith outside the
> scope of [their] duties can it evade the doctrine of official
> immunity.

*Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-

deprivation remedy for Taylor to seek redress for the loss of his property. *Ala. Code* § 41-9-

60 *et seq*. (1982).  Consequently, his allegation that his due process rights were violated by

Defendants' confiscation and destruction of his property, whether such was the result of

21

negligence or an intentional act, entitles him to no relief from this court.

## G. Standing

A review of Taylor's complaint reveals that some of his allegations are generalized assertions that Defendants engaged in conduct or behavior that purportedly violates other inmates' constitutional rights to adequate medical care and constitutional conditions of confinement.  Taylor is not entitled to relief on claims made against Defendants which fail to demonstrate that he was affected directly or indirectly by Defendants' actions as he lacks standing to assert the constitutional rights of other persons.  *Saladin v. City of Milledgeville*, 812 F.2d 687 (11th Cir. 1987); *Allen v. Wright*, 468 U.S. 737, 751 (1984).

A plaintiff must assert legally cognizable injury in fact, whether real or threatened, before federal courts have jurisdiction.  *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-19 (1974).  Standing involves two aspects.  The first is the minimum "case or controversy" requirement of Article III.  This requirement mandates that the plaintiff himself suffer actual or threatened injury resulting from the action challenged and that such injury is likely to be redressable in a judicial action.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  In addition, the Supreme Court has established several requirements based on prudential considerations.  *See Saladin*, *supra*. The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person.  *Allen v. Wright*, 468 U.S. 737, 751 (1984).

In light of the foregoing,  Taylor's claims against the named defendants which do  not "assert[ ] his . . . own legal rights and interests [but] rather . . . the legal rights and interests

of third parties," *Saladin*, 812 F.2d at 690, allege "infringement of a legal interest which clearly does not exist." *See Neitzke*, 490 U.S. at 327.  Such claims are, therefore, due to be dismissed.

*H. The Medical Claims*

Taylor asserts that he was denied adequate medical care during his incarceration at Bullock. Specifically, Taylor makes the following allegations regarding his medical care: (1) he was stalked and harassed for his refusal to take the drug Prolixin; (2) after slipping in a puddle of water which caused him head, neck, and back pain, he was not given an x-ray or medicine but only a change of prison clothes and Advil; (3) inmates must sometimes wait an hour or more to be seen by medical personnel because they use the infirmary for cook-outs, parties, and celebrations; (4) he has not received treatment for the side effects he still experiences from Prolixin shots he stopped taking almost two years ago, (5) on September 3 or 4, 2003 he requested medical attention for underarm irritation, coughing, sore throat, "(L)foot heel & unfit prosthesis," knot on stump, shower shoes, "riasons," and jerking hands, and although he spoke to a physician that day he was not seen for his ailments but still had to pay a $6.00 co-pay for two body charts; and (6)  Nurse Slater denied him access to proper medical treatment, failed to place his name on the doctor list, and changed the time of his medication.

*i.  Deliberate Indifference*

To prevail on a claim concerning an alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants

acted with deliberate indifference to his health.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)

("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently

harmful to evidence deliberate indifference to serious medical needs.  It is only such

indifference that can offend 'evolving standards of decency' in violation of the Eighth

Amendment.").  When seeking relief based on deliberate indifference of prison and/or

correctional medical personnel, an inmate is required to establish "an objectively serious

need, an objectively insufficient response to that need, subjective awareness of facts

signaling the need and an actual inference of required action from those facts."  *Taylor v.*

*Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th

Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive

risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v.*

*Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Consequently, deliberate indifference occurs

only when a defendant "knows of and disregards an excessive risk to inmate health or safety;

the [defendant] must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511

U.S. at 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must

have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore

known risk to serious condition to warrant finding of deliberate indifference).  Furthermore,

"an official's failure to alleviate a significant risk that he should have perceived but did not,

while no cause for commendation, cannot under our cases be condemned as the infliction of

punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291; *Mandel*, 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). Thus, as previously noted, to survive summary judgment on his claim of deliberate indifference, Taylor is "required to

produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale*, 50 F.3d at 1582.

Medical personnel provided examination and treatment for Taylor with regard to his various medical complaints including but not limited to head, neck, and back pain, heel pain, pain to his stump, and complaints concerning his prosthetic. Treatment for Taylor's medical issues included the taking of vital signs, prescribing and/or dispensing appropriate medications, creams, and ointments, and prescribing various medical profiles. In Dr. Siddiq's medical opinion, lancing a callous on Taylor's left heel was not medically necessary. (Doc. No. 29, Plaintiff's Medical Records, Doc. No. 115, Haynes Affidavit, Doc. No. 116, Attachments - Affidavits 1-8.)

With regard to Taylor's complaints related to his prosthesis, his medical records show the following. In August 2001 he received a consultation with a representative of a prosthetic and orthotics center for a new prosthesis. A new prosthesis with a petite insert and suspension sleeve was made for Taylor. In December 2001 he received the right below knee prosthesis and 1-ply cotton socks. In May 2003 Dr. Siddiq examined Taylor for his complaints of problems with his prosthesis. The physician found the exam unremarkable and ordered a lay-in for Taylor for 20 days. In June 2003 Taylor received two-ply prosthetic stockings. In July 2003 Dr. Siddiq examined Taylor for complaints of problems with his stump, his need for socks, and repair of his prosthesis. The doctor's evaluation of Taylor included observance of signs of wear and tear to the prosthesis which was fixing to Taylor's leg and worn socks. Dr. Siddiq requested repair of the prosthesis and replacement socks. Dr.

Siddiq also educated Taylor about no heavy weight bearing and gave him a lay-in profile for 20 days.  On September 1, 2003 Dr. Siddiq examined Taylor and noted he had mild pain and was walking okay.  A consultant with a prosthetics and orthotics center spoke with Taylor on September 8, 2003.  The consultant found that Taylor needed a definitive prosthesis and new stump socks.  He recommended that Taylor's petite liner be rebuilt or that he receive 5-ply socks for his temporary prosthesis while he waited for the new definitive prosthesis.  Dr. Siddiq saw Taylor approximately eleven days after his consultation and noted that he was doing well. (Doc. No. 29, Plaintiff's Medical Records, Doc. No. 115, Haynes Affidavit, Doc. No. 116, Attachments - Affidavits 1-8.)

The evidentiary materials submitted by Defendants demonstrate that prison medical personnel routinely monitored and evaluated Taylor and provided treatment in accordance with their assessment of his condition.  Taylor's medical records also reflect that he was prescribed appropriate medications, topical ointments and creams, and treatment for his medical complaints.  Additionally, medical personnel ordered  various  profiles and other substantive treatment when they deemed such necessary upon evaluation of Taylor's condition and/or complaints.  There is no indication in Taylor's medical records that he was ever denied any necessary medication or treatment or that he suffered any injury or damage due to a denial of or deficiency in medical care while at Bullock.   (Doc. No. 29, Plaintiff's Medical Records, Doc. No. 115, Haynes Affidavit, Doc. No.  116, Attachments - Affidavits 1-8.)

The court has conducted a thorough and careful review of all the evidentiary materials

submitted by the medical defendants in this case.  From that review, the undersigned finds that Taylor received routine, timely, and appropriate medical care, treatment, and medication in response to his complaints and concerns about his health and medical conditions.  He has no constitutional right to  specific medical treatment on demand simply because he thinks he needs a certain procedure,  nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care."). Further, to the extent Taylor's claim is based upon his own disagreement with the prison medical staff about his medical treatment, such claim does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm v. DeKalb County*, 774 F.2d at 1575. Additionally, any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.  *Hill*, 40 F.3d at 1188. Here, the court finds that no verifying evidence has been produced tending to establish any detrimental effect of delay in providing medical services or medical care to Taylor while he was incarcerated at Bullock.

Based on the foregoing, the court finds that Taylor has failed to establish that his constitutional rights were violated by Defendants.  Assuming, *arguendo*, that Taylor's condition constitutes a serious medical need, he has not presented evidence of Defendants' deliberate indifference. Nor has Taylor shown that their treatment decisions reflected a substantial departure from accepted professional judgment, practice, or standards which tends to show that they did not make decisions based on such judgments. *See Youngberg v.*

*Romeo*, 457 U.S. 307,  323 (1982).  "As noted, a difference of opinion between an inmate and health care personnel regarding the expediency of a specific treatment does not generally create a constitutional claim, and does not do so in the instant case.  *Waldrop*, 871 F.2d at 1033; *Hamm*, 774 F.2d at 1575.  Taylor has failed to come forward with any evidence showing that Defendants knew that the manner in which they were treating him created a substantial risk to him and that they disregarded that risk.  In the absence of such a showing by Taylor, Defendants' motions for summary judgment are due to be granted.

ii. *Medical Co-Pay*

To the extent Taylor challenges the assessment of co-payments for medical treatment, this practice does not in any way deprive him of a protected right, privilege or immunity in violation of the Constitution. *Shapley v. Nevada Board of State Prison Commissioners*, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); *Oliver v. Matthews*, 2005 WL 1270949 (M.D. Ala. 2005). The law is well-established that if an inmate is unable to pay for necessary medical care, that care must be provided at state expense. *Estelle,*, 429 U.S. 97. Fees-for-medical/dental-services programs, however, do not require inmates to shoulder unconstitutional conditions, but instead, require inmates to make resource allocation decisions for which they will have some, albeit limited, responsibility. *See Johnson v. Dept. of Public Safety and Correctional Services*, 885 F. Supp. 817 (D. Md.1995) (co-pay policy); *Martin v. DeBruyn*, 880 F. Supp. 610 (N.D. Ind. 1995). Taylor does not allege that he was denied medical treatment because he was unable to pay the fee and, therefore, he has failed

to allege a violation of his constitutional rights.

### iii.  Medical Contractor

Taylor names NaphCare, Inc., as a defendant to this cause of action.  In contracting with the Department of Corrections to provide prison medical services, NaphCare is bound by the State's obligations to its prisoners under the Eighth Amendment.  *West v. Atkins*, 487 U.S. 42, 54-58 (1988).   Under well-settled law, however, Taylor cannot predicate NaphCare's liability for the alleged constitutional violations in this case on a theory of *respondeat superior,* nor may NaphCare be held responsible for the constitutional violations of its employees.   Naphcare may only be held liable if its policies or procedures are unconstitutional or are the "moving force" behind the constitutional violation.   *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694-95, (1978); *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985).

Taylor has presented no evidence which would show that NaphCare was actually involved in the constitutional deprivations about which he complains.  Thus, this medical contractor's liability must arise from another source.  The analysis to be applied to the potential liability of NaphCare is the same as that applied to municipalities under the Supreme Court's decision in *Monell, supra.* Under *Monell*, in order to hold NaphCare liable for the deliberate indifference of its contract physicians and other medical personnel, Taylor must show that the doctors or other medical personnel, in providing constitutionally inadequate treatment to him, were implementing official NaphCare policy or unofficial customary practice.  *Monell*, 436 U.S. at 690-691.  Additionally, as noted, before liability

can be imposed, Taylor must show that the policy or custom was the root cause of the constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. at 820. Thus, it is clear that not only must there be some degree of "fault" on the part of NaphCare in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation. *Id.* at 823.

In the instant action, the court finds that, at best, Taylor does no more than attempt to assert that NaphCare contracted to provide medical services for inmates incarcerated in the ADOC and that it was the provider at Bullock during the time the alleged inadequate medical treatment occurred. The complaint is devoid of any attempt to identify a policy or custom of NaphCare which caused the alleged constitutional violation. (*Id.*) Consequently, the Court concludes that Taylor's complaint against NaphCare fails to state a claim upon which relief may be granted.

*I. The Excessive Force Claim*

On September 11, 2003 Taylor assert that he experienced a seizure and was going in and out of consciousness. Taylor contends that as a result of his condition, Defendant James and Officer Williams had inmate Jerome Lee carry him to the infirmary. As Nurse Lake was examining Taylor, Sgt. Jackson entered the infirmary. Taylor asserts that Sgt. Jackson commented that he did not have time to deal with the event and that Defendants Jackson and James and Officer Williams then dragged him back to segregation by his arms as though they were "swanging [sic] a mop" and bumped his head against the floor and walls. Taylor alleges that he re-injured his back and neck as well as sustained scars, scratches, and scrapes

from the incident.  (Doc. No. 1.)

The unrefuted evidentiary material filed in this matter reflects the following.   On September 11, 2003 at approximately 3:40 a.m. an inmate carried Taylor to the infirmary. Taylor lay on the examination table with his eyes closed and gave no verbal response to medical personnel. Upon examination, medical personnel found Taylor's pulse to be strong, his blood pressure was good, and his lungs were clear.  Thus, Nurse Lake informed Sgt. Jackson that there was no medical reason for Taylor's unresponsiveness and indicated that he could be returned to segregation. Sgt. Jackson then ordered Taylor to get off the table and report back to his dorm. After Taylor refused to comply with repeated orders that he get up from the examining table and walk  to his dorm under his own power, Defendants Jackson and James and Officer Williams  grasped Taylor's upper arms and his left leg and carried him to the segregation unit.   The correctional officers then placed Taylor in a single cell without further incident pending disciplinary action for his violation of Rule #56, Failure to Obey a Direct Order.  (Doc. No. 36,  Exhs. 2, 6.)

The court understands Taylor to allege that Defendants James and Jackson  subjected him to excessive force  in violation of the Eighth Amendment.  "Not every push or shove, even if it may later seem unnecessary . . ., violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *cited with approval in Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 9-10, quoting

*Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996) (the application of *de minimis* force does not support a claim for excessive force).

Here, the court finds that the physical contact about which Taylor complains was necessitated by his unrefuted failures to comply with the orders of a correctional officer that he walk to the segregation unit under his own power and was at most a "*de minimis* use[] of physical force" which is excluded from "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments," as such contact "is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10; *Anderson v. Sullivan*, 702 F. Supp. 424 (S.D.N.Y. 1988) (officer who pushed prisoner into a bar and put his hands behind his back to apply handcuffs did not administer excessive force). Even though Taylor bumped his head while passing through a door on his way to the segregation unit, by his own admission "[i]t wasn't no real major." (Doc. No. 33, Exh. 2- Plaintiff's Deposition Excerpt.) Further, Taylor presents no evidence that Defendants James or Jackson acted maliciously and sadistically with the intent of causing harm. Summary judgment is, therefore, due to be granted in favor of these Defendants.

*J. Respondeat Superior*

To the extent Taylor files suit against Defendants Campbell, Jones, Holt, Boyd, and Nettles due to their supervisory roles, he is entitled to no relief. The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of *respondeat superior* or on the basis of vicarious liability. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.

1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).

*K.  The Alabama Department of Corrections*

The Alabama Department of Corrections is not subject to suit or liability under §
1983. The Eleventh Amendment bars suit directly against a state or its agencies, regardless
of the nature of relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89
(1984). In light of the foregoing, the court concludes that Plaintiff's claims against the
Alabama Department of Corrections are due to be dismissed.  *Id.*

# VI.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Plaintiff's claims which arose prior to October 8, 2001 be DISMISSED with
prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) as such claims are not filed within the time
prescribed by the applicable statute of limitations;

2.  Plaintiff's complaint against Defendants Turner and Sanders be DISMISSED
without prejudice for failure to perfect service on these individuals;

3.  Defendants' motions for summary judgment (Doc. Nos. 29, 33, 36, 115) be
GRANTED;

4.  Judgment be ENTERED in favor of Defendants and against Plaintiff;

5.  The costs of this proceeding be TAXED against Plaintiff for which execution may
issue; and

6.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before July 13, 2006 the parties shall file any objections to the said Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

DONE, this 30 day of June, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

35